## Sinclair Refining Co. v. Blight Bros.

*Charles B. Waller* and *J. Thirwall Griffith,* for plaintiff.

*Joseph L. O'Donnell,* for defendant.

FLANNERY, J., May 14, 1959.—Plaintiff is a Maine corporation engaged in the business of manufacturing, refining, selling and offering for sale petroleum prod-

ucts including gasoline in the "State of Pennsylvania and elsewhere" and as such is engaged in interstate commerce.

Defendant is a retail dealer in plaintiff's products, maintaining and operating a gasoline service station in the Borough of Luzerne, Luzerne County.

On October 30, 1958, plaintiff entered into fair trade agreements with many of its dealers in Pennsylvania and on February 20, 1959, gave to defendant written notice thereof and a list of the dealer minimum retail prices for its products as there stipulated.

Despite this and subsequent notices, both oral and in writing, defendant sold and continues to sell Sinclair gasoline, both H-C gasoline and Power X gasoline, at prices below stipulated dealer minimum retail prices set for such products in the fair trade arrangement.

Plaintiff thereupon obtained a preliminary injunction restraining the defendant from violating the fair trade price structure. After hearing on the motion to continue we dissolved the injunction and to facilitate plaintiff's appeal we did so by simple order. This memorandum of law is written in support of that order.

The testimony developed the facts generally as we have set forth above, but with one important addition. It was also shown by plaintiff that independent of its retail outlets, such as defendant, it, the parent company, also sells competitively in the same area and to do so actively solicits patronage from customers equally available to defendant. This patronage is defined euphemistically as commercial, industrial and municipal, but we have no difficulty in identifying it as the cream of the business.

The great weight of authority is in accord with the conclusion that the Pennsylvania act was at the time of its passage "unconstitutional as applied to interstate commerce, being in conflict with the Sherman Anti-Trust Act [of July 2, 1890, 26 Stat. 209, 15 U. S.

C. §1 et seq.]. Schwegmann Bros. v. Calvert Distillers Corp., 341 U. S. 384. In 1952 Congress enacted the so-called McGuire amendment to the Federal Trade Commission Act which reversed the doctrine declared in the Schwegmann case and removed from the prohibition of the Sherman Anti-Trust Act the non-signer provisions of state fair trade acts": Burche Co. v. General Electric Company, 382 Pa. 370.

It will be necessary then to explore the scope of this legislation as it relates to our problem and in doing so we find there is a pertinent exception. It is provided in the McGuire Act of July 14, 1952, 66 Stat. 632, 15 U. S. C. §45 (a) (5) :

"Nothing contained in paragraph (2) of this subsection shall make lawful contracts or agreements providing for the establishment or maintenance of minimum or stipulated resale prices on any commodity referred to in paragraph (2) of this subsection, between manufacturers, or between producers, or between wholesalers, or between brokers, or between factors, or between retailers, or between persons, firms, or corporations in competition with each other."

It would appear that when the McGuire Act "removed from the prohibition of the Sherman Anti-Trust Act the non-signer provisions of state fair trade acts", it made an exception which applies here and by virtue of which plaintiff cannot prevail. In a set of facts practically identical with ours, the District Court of Massachusetts has so ruled and that authority would seem to be controlling.

In Esso Standard Oil Co. v. Secatore's Inc., in the United States District Court for the District of Massachusetts, civil action no. 56-790 W, dated November 21, 1956 (Reported Trade Cases, 1956, Commerce Clearing House Inc. Pub. No. 63-245), what appears to be the same question as presented here was con-

sidered by the distinguished District Judge Wyzanski. He held:

"The agreement admittedly is a restraint of trade unless it is specifically exempted by the provisos of the Miller-Tydings Act or the McGuire Act, 50 Stat. 693, 66 Stat. 632. United States v. McKesson & Robbins, Inc. [1956 Trade Cases §68, 368], 351 U. S. 305.

"These provisions are not operative because the exemption conferred by them is not available 'between persons . . . in competition with each other.' Competition, as there used, is not confined to a situation where the producer or distributor performs the same function, or makes the same type of offers, or combines in one package the same incidental benefits as the person with whom he is said to be in competition. The statute precludes agreements between those who in fact are competitors for the same business, no matter how different their approach.

"If the statute is not read in this broad way, it would follow that through the use of a so-called fair trade agreement this plaintiff would be at liberty by setting a high re-sale price for retail gasoline service stations to drive all their large customers into abandoning the retail outlets and securing gasoline directly from plaintiff. To assume that Congress left the door open to such potential abuse is to ignore the history and the policy as well as the language of the Sherman Act, the Miller-Tydings Act, and the McGuire Act."

Considering the question from an intra-state point of view, we find that the Pennsylvania statute, the Fair Trade Act of June 5, 1935, P. L. 266, was passed to prohibit unfair competition and to protect the public as well as the producer in his products and its marks, names and labels. How the public is protected by maintaining artificially fixed prices not responsive to the law of supply and demand between dealers often remote from each other is not made clear, but such

are the pronouncements of our appellate courts and these we are judicially bound to accept.

In 1956 that act was amended (May 25, 1956, P. L. 1756, sec. 1, 73 PS §8), and unfair competition was there defined as: ". . . advertising, offering for sale, or selling any commodity at less than the price stipulated in any contract entered into pursuant to the provisions of section one of this act, whether the person so advertising, offering for sale, or selling is, or is not, a party to such contract . . .".

However, in the second sentence of the section there is set forth a defense available to a dealer charged with a violation and this requires the coöperation of the author of the arrangement, plaintiff here, in protecting the dealer from unfair competition from others. That part of the section provides:

". . . It shall, however, be a complete defense to such an action for the defendant to prove that the party stipulating such price, after at least seven days written notice given by the defendant prior to the commencement of such action, has failed to take reasonable and diligent steps to prevent the continuation of such advertising, offering for sale or selling, by those in competition with the defendant, who were specified in such notice."

The manufacturer then must take "reasonable and diligent steps to prevent" cut price, sales by others in competition with the dealer when that condition is brought to its attention.

It would appear, therefore, that so far as Pennsylvania may regulate this commerce, plaintiff here is in a precarious position. He constitutes himself the competition which he is legally bound, upon appropriate notice of course, to prevent. Having placed himself in that unenviable position he then virtuously comes into equity and asks that defendant be enjoined, asks that

defendant be placed in a rigid straitjacket of price control while he himself continues to cut the price and get the business in defiance of the statute.

We have ignored in this discussion the seven days written notice required by the act. The law indulges in no vain or futile rhetoric and the manufacturer requires no notice from defendant that it is doing that which its agent testified is its regular business practice.

Under such circumstances we are constrained to conclude that the admitted facts work an equitable estoppel which defeats plaintiff's suit. We so hold.

In view of these conclusions we deem it unnecessary to consider other equitable principles that have been informally urged by counsel for defendant; suffice to say that:

The motion is denied, the injunction is vacated and the preliminary proceedings are dismissed.